MAYER BROWN LLP
EDWARD D. JOHNSON (SBN 189475)
wjohnson@mayerbrown.com
MICHAEL A. MOLANO (SBN 171057)
mmolano@mayerbrown.com
CLIFF A. MAIER (SBN 248858)
cmaier@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile:   (650) 331-2060

Attorneys for Plaintiff
CIVOLUTION B.V.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CIVOLUTION B.V.,<br><br>            Plaintiff,<br><br>    v.<br><br>DOREMI LABS, INC.,<br><br>            Defendant. | Case No. 2:14-cv-00962-JAK-RZ<br><br>**PLAINTIFF CIVOLUTION B.V.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Date:  November 3, 2014<br>Time:  10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. DISPUTED TERMS ........................................................................................... 1

    a. "value" (claims 1 and 5) ........................................................................ 1

    b. "image area" (claims 1 and 5) .............................................................. 2

    c. "dividing an image of the sequence of images into at least a first and a second image area." (claims 1 and 5) ................................................... 3

    d. "oppositely modif[y/ies] the mean luminances of the first and second image areas" (claims 1 and 5) ............................................................. 5

    e. "image halves" (claims 3 and 4) .......................................................... 6

    f. "image modifying means" (claim 5) .................................................... 8

    g. "means for dividing an image" (claim 5) ............................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
　707 F.3d 1318 (Fed. Cir. 2013)........................................................................6

*Auto. Tech. Int'l, Inc. v. BMW of N. Am., Inc.*,
　501 F.3d 1274 (Fed. Cir. 2007)........................................................................4

*Blackboard Inc. v. Desire2Learn, Inc.*,
　574 F.3d 1371 (Fed. Cir. 2009)......................................................................10

*Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*,
　707 F.3d 1330 (Fed. Cir. 2013)........................................................................4

*ePlus, Inc. v. Lawson Software, Inc.*,
　700 F.3d 509 (Fed. Cir. 2012)........................................................................10

**STATUTES**

35 USC §112(f)................................................................................................8, 9

**OTHER AUTHORITIES**

U.S. Patent No. 7,884,072..............................................................................2, 9

## I. INTRODUCTION

Doremi's opening claim construction brief offers support for constructions that either misstate or simply ignore the embodiments in the patent specification. For example, Doremi misstates the specification in an effort to pretend that the specification's "simplest embodiment" is the sum total of the claimed invention. In addition, Doremi relies on disclosure in the specification explicitly directed to describing the *prior art* instead of describing the claimed invention. Moreover, Doremi would have the Court ignore embodiments in the specification that contradict its proposed constructions, including the *preferred* embodiment, such as in the construction of "value" where, contrary to Doremi's assertions, not *all* of the pixels in an image area are affected by the watermark value. Even Doremi's reliance on extrinsic evidence is strained as shown by their reliance on the sixth dictionary definition of "area" (ignoring the first five definitions) from one dictionary, and only part of the second definition (ignoring the remainder) from another.

For these reasons, Doremi's constructions should be rejected and the terms should be construed in accordance to their plain and ordinary meaning.

## II. DISPUTED TERMS

### a. "value" (claims 1 and 5)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| Plain and ordinary meaning. | value that is not zero |

As discussed in Civolution's opening brief, Doremi ignores that there are two types of "value" *in the same claim term*, which must have the same meaning. Dkt. 33 at 6-7. Nothing in Doremi's opening brief attempts to explain why one of these types ("luminance values") cannot be zero.

Moreover, Doremi's *entire* argument is based on the mistaken assertion that

1  because *one embodiment* in the specification recites adding w(n) to every pixel, the
2  claim must also be so limited.  Dkt. 32 at 11.  If one accepts that one need only add
3  or subtract a non-zero value to *some* pixels in each image area, then Doremi's
4  argument falls apart.  This is because the image areas will have their mean
5  brightness modulated in opposite directions in such a case *even though a value of*
6  *zero* was applied to some pixels in each area.

Even in the embodiment cited by Doremi, which the specification refers to
as the "simplest embodiment," the specification makes clear that a value of zero
will sometimes be added or subtracted.  2:62-3:3.[1]  As discussed in Civolution's
opening brief, this is a result of "clipping," which the specification states is part of
this embodiment. Dkt. 33 at 12.

Doremi's proposed construction runs afoul of the rule that same claim terms
should have the same meaning across multiple claims, especially for multiple uses
of the same term in the *same* claim. It also relies on a mistaken interpretation of
one (non-preferred) embodiment and should therefore be rejected.

### b.  "image area" (claims 1 and 5)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>To the extent a recitation of the plain and ordinary meaning is necessary, Civolution proposes "continuous part of an image" | "continuous part of an image comprising at least one pixel" |

Doremi's entire argument here rests on an extrinsic definition of "area," but
its argument strains credibility.  Doremi appears to argue that since one can
calculate the surface area of an object to be 1 square unit (*e.g.*, 1 pixel[2]), then

---

[1] Column 2, line 62-Column 3, line 3 of U.S. Patent No. 7,884,072 ("'072 Patent").  This nomenclature will be used going forward to refer to the column and line numbers of the '072 Patent.

"area" must include one pixel. There are at least three problems with this argument.

First, it ignores the intrinsic evidence, recited in Civolution's opening brief, that an image area cannot be a single pixel. Dkt. 33 at 9. Second, it conflates two usages of the term "area." The "area of a circle" is not the same thing as a "circular area." One is a measurement that can be performed on the other; it is unfortunate that they share the same word, but it is clear that, as used in the claims, the term refers to a patch of image real estate, and not the *measurement* of the surface of that patch of real estate.

Doremi selectively cites its extrinsic "evidence" to try to make its point. For example, the Merriam-Webster dictionary[2] cited by Doremi recites: "2: the surface included within a set of lines; *specifically*: the number of unit squares equal in measure to the surface." Doremi conveniently omitted (without any indication) the first part of the definition it chose to cite (as well as earlier definitions like "a part or section within a larger place.") Dkt. 32, Exh. A. In citing the American Heritage dictionary, Doremi resorted to definition number 6, ignoring definitions such as "a distinct part or section…" and "a roughly bounded part of the space on a surface; a region." Dkt. 32, Exh. B.

Finally, by Doremi's convoluted logic, since surface area may be measured to be zero, then an image area of zero pixels must be acceptable. This is clearly wrong, as even Doremi must confess.

Given that Doremi cites no substantive intrinsic evidence and selectively chooses (the wrong) extrinsic support, its proposed construction should be rejected.

### c. "dividing an image of the sequence of images into at least a first and a second image area." (claims 1 and 5)

---

[2] The dictionary appears to be an on-line dictionary published in 2014, not at the time of filing of the patent, and thus is not proper evidence in any event.

- 3 -

| **Civolution Proposed Construction** | **Doremi Proposed Construction** |
|---|---|
| Plain and ordinary meaning | Lacks enablement. |

Civolution first notes that Doremi does not propose any construction for this term so it should be precluded from offering one in the future.

With respect to its enablement argument, Doremi clearly has not met its burden to prove lack of enablement by clear and convincing evidence. In fact, it has cited *no evidence* at all. Doremi's argument is nothing more than a recitation of the law followed by hypothetical attorney questions. It does not address, at all, any of the detailed explanation of dividing the image that Civolution cites in its opening brief. And it makes the false statement that the specification provides only a "single working example" of dividing into upper and lower halves (ignoring, for example, the literal text of claim 4, which recites right and left halves).

Having cited absolutely no evidence, Doremi cannot possibly have met its burden to show that the patent is invalid for lack of enablement by clear and convincing evidence. See *Auto. Tech. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007). (Applying a "clear and convincing" standard to an enablement inquiry "[b]ecause a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.") *Ipse dixit* statements about what a person having ordinary skill in the art would be enabled to do in light of the specification are not enough to constitute clear and convincing evidence. See *Cephalon, Inc. v. Watson Pharmaceuticals, Inc.,* 707 F.3d 1330, 1338 (Fed. Cir. 2013) (Rejecting ipse dixit *expert* testimony unsupported by fact as insufficient to meet this burden.) Rather Doremi has "the burden to show by way of testimony or documentary evidence the amount of experimentation needed." *Id.* at 1339.

Doremi's enablement motion is entirely devoid of evidence of any kind, and should be rejected. The term should have its plain and ordinary meaning.

### d. "oppositely modif[y/ies] the mean luminances of the first and second image areas" (claims 1 and 5)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| Plain and ordinary meaning | "increase[s] the mean luminance of one area and decrease the mean luminance of the other area by the same amount" |

Again, Doremi's entire argument rests on the false assertion that the claims require that the "watermark sample value is added to the luminance of every pixel of the first image area and subtracted to [sic] the luminance of every pixel of the second image area." Dkt. 32 at 9. Civolution has already addressed herein, with respect to the term "value," how "clipping" is contrary even to Doremi's reliance on this "simplest embodiment."

Moreover, as discussed in Civolution's opening brief, the specification clearly indicates the falsity of this assertion with respect to the *preferred embodiment*. Namely, as recited in the specification:

> The preferred embodiment of the embedder which is shown in FIG. 1 further adapts the embedding depth in dependence upon the image contents. To this end, the embedder comprises multipliers 14 and 15, which multiply the watermark sample $w(k)$ by a local scaling factor $C_{F,1}(\underline{n},k)$ and $C_{F,2}(\underline{n},k)$, respectively. The local scaling factors are derived from the image contents by image analyzers 16 and 17, respectively. For example, they are large in moving textured parts of an area and small in non-moving flat parts.

3:22-30. In other words, in *the preferred embodiment*, different pixels within an image area will be multiplied by *different watermark sample values* since the watermark sample value will depend on the underlying image data. The specification discusses this as part of a discussion of the "human visual system," and how humans react to brightness changes in non-moving flat areas. 3:10-21. So if a portion of a solid wall is found in the image area, it will be modified less than another part of the image area depicting a speeding car. Unless the image is

symmetric with symmetric movement, obviously the mean luminance of each image area will not be affected by the same magnitude in this embodiment.

Because Doremi's entire argument hinges on importing not just a non-preferred embodiment, but its own distorted misreading of that embodiment, while excluding the *preferred* embodiment, it should be rejected. See *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) ("a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").

### e. "image halves" (claims 3 and 4)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| Plain and ordinary meaning | "Two continuous parts of the image each comprising half of the image's pixels" |

Doremi chooses to base its entire argument, once again, on a misreading of a single embodiment. First, Doremi cites an equation in the specification at column 3, line 60. Dkt. 32 at 14. It then resorts to explaining the equation by skipping two columns to determine what the variables mean, ignoring the variable definitions actually in column 3. Doremi says N means "pixels per frame." *Id*.

First, while the specification refers to "frames" and "images" as two different things, the claims recite *image* halves, not *frame* halves. The specification, for example, refers to the embedder receiving "a sequence of images *or* frames." 2:52-54, 3:44-46.

Second, in columns 2, 3 and 4, the specification states that N is how many frames before the watermark repeats, *not* the number of "pixels per frame." 2:54-57, 3:18-20, 4:16-17, 4:31-33. The equation Doremi relies upon is part of a discussion of how pixels change luminance over time and how the watermark may be detected given that the movie, itself, exhibits changes in brightness from frame-to-frame. ("In practice, the mean luminance values of a movie exhibit a low-pass

- 6 -

nature as a function of the frame number k (i.e. as a function of time)." 3:61-63.

Instead of using the definition of N corresponding to the actual equation Doremi relies on, Doremi skips to column 5 for a more favorable definition of N. However, the description they rely on for N in column 5 is referring to *the prior art*:

> "In order to describe the invention in even more details, a **mathematical analysis of the prior-art watermarking scheme**, an analysis of the publicly available de-flickering tool, and the operation of the watermarking scheme in accordance with the invention will now be given."

5:4-9 (emphasis added). See also:

> **In [2],** a texture detector and a motion detector are used to determine $C_F$. As a result, the mean luminance values of the watermarked video $f_w$ [equation omitted] **with N being the number of pixels per frame**…"

5:28-39 (emphasis added). The "[2]" obviously is meant to refer to the Haitsma/Kalker prior art first referenced in the specification at 1:40-44.[3] Doremi thus bases its argument on *the prior art* distinguished both in the specification itself and in prosecution.

Making matters worse, Doremi manufactures from whole cloth its definition of the variable *n* in the equation, stating that "[s]ince calculating both image areas' mean luminance requires adding the same number of pixels (*i.e.*, *n*) and dividing by the same constant (*i.e.,* N), then mathematically the image areas must be the same size." Dkt. 32 at 14.

The specification does *not* say *n* is the number of pixels in the image area. Rather, the specification repeatedly states that *n* is a "spatial position" within frame k. 2:52-54, 3:44-46. Moreover, Doremi cites *no* disclosure for its assertions that

---

[3] This notation is commonly used in academic papers to specify references; for example this is done in the Haitsma/Kalker reference, itself. The Haitsma/Kalker reference discloses texture and motion detectors, for example in section 3. Declaration of Michael A. Molano In Support of Civolution B.V.'s Responsive Claim Construction Brief ("Molano Decl.") as Exhibit 1.

the value of $n$ or the value of N must be the same for both image areas; indeed, $n$ varies *within* a single image area (as an image area presumably has more than one spatial position, and $n$ is referenced to the frame, not the image area), and is not a constant that applies to both image areas. And since the disclosure Doremi relies upon for its definition of N is referring to *the prior art* in which *there are not two image areas*, of course the specification does not state anything about two image areas having the same value of N and $n$. Doremi, without evidence, asserts (its unsupported interpretation of) N and $n$ are identical between the two image areas, then relies on this naked assertion to derive that the sizes of the two halves must be the same.

As Doremi's entire argument is based on an incorrect interpretation of the specification, bolstered only by attorney argument without *any* basis in the specification, its construction should be rejected.

### f. "image modifying means" (claim 5)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| To the extent 35 USC §112(f) applies, corresponding structure is embedding stages 11, 12 and equivalents. | Doremi agrees that corresponding structure is one or more of embedding stages 11, 12 and equivalents. |

As explained in Civolution's opening brief, the claim clearly enumerates numerous "acts with the claim itself to perform entirely the recited function." Dkt. 33 at 16. Doremi no longer asserts that, if this claim falls under 35 U.S.C. §112(f), there is insufficient structure. Doremi appears to admit that the claim limitation recites numerous "acts" and only argues that these acts are not "structure," ignoring that the statute, on its face, does not apply when sufficient acts are enumerated in the claim. 35 U.S.C. §112(f). Doremi states that claim 5 is "essentially identical to claim 1, a method claim" but does not explain the basis for

such an assertion, instead basing its argument on that other claim. Dkt. 32 at 18.

In fact, the crux of Doremi's argument is that language in Claim 5 like "the modification comprising adding the watermark sample value to the luminance value of pixels of the first image area" would not enable a person of skill in the art to "perform *entirely* the recited function." Dkt. 32 at 18. Doremi is requiring a level of specificity unsupported by any case law, and further offers *absolutely no* evidence for its attorneys' assertion. It then bootstraps its argument by claiming that the missing disclosure is a description of embedding stage 11 that is found not in the claims but in the specification. *Id.* But the claim is broader than merely embedding stage 11, and embedding stage 11 would be a limitation only *if* 35 U.S.C. §112(f) applied.

Moreover, after citing case law that states that "[t]he presumption can be rebutted if the claim 'elaborate[s] sufficient structure, material, or <u>acts</u> within the claim itself to perform entirely the recited function'" ((emphasis added) Dkt. 32 at 17), Doremi then complains that 35 U.S.C. §112(f) applies *because* the claim "only recites acts and functions." Dkt. 32 at 18.

As Doremi proffers no evidence contradicting Civolution's argument that the claim recites extensive structure and acts to perform the function, and as Doremi, in fact, admits that the claim recites such acts and provides only attorney argument as to why these acts are insufficient, its argument must fail.

### g. "means for dividing an image" (claim 5)

| Civolution Proposed Construction | Doremi Proposed Construction |
|---|---|
| To the extent 35 USC §112(f) applies, corresponding structure is dividing stage 10 and equivalents. | Lacks corresponding structure. |

In its opening brief, Civolution listed extensive descriptions of the structure and operation of the dividing means recited in the '072 Patent specification. For

- 9 -

example, the specification recites that the entire embedding structure may be constructed using a "time-sequential" "single processing circuit under appropriate software control." 3:36-39.  The specification also recites detailed equations explaining the inputs and outputs of the dividing means, and the properties of the resulting image areas.

Doremi fails to address any of this evidence in its opening brief, instead citing only one line from the specification and cynically using ellipses to make even this disclosure seem less substantial than it is. Dkt. 32 at 16.

Moreover, the cases cited by Doremi are inapposite.  Here, the specification recites the use of sequential circuits under appropriate software control, provides a mathematical description of the division and mathematically constrains the parameters of the division by detailing, in equation form, how the division affects the ability to detect the watermark after de-flickering.  In *Blackboard*, by contrast, "[t]he specification contains <u>no description</u> of the <u>structure or the process</u> that the access control manager uses to perform the 'assigning' function." (emphasis added) *Blackboard Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009).  Similarly, in *ePlus*, "there is <u>no explanation</u> as to what <u>structure or algorithm</u> should be used to generate the purchase orders." (emphasis added) *ePlus, Inc. v. Lawson Software, Inc.,* 700 F.3d 509, 518 (Fed. Cir. 2012).

Doremi has clearly failed to meet its burden to overcome the presumption of validity, and thus the claim should be found definite.

DATED:  October 14, 2014              MAYER BROWN LLP

By: */s/ Michael A. Molano*
     Michael A. Molano

Attorneys for Plaintiff
CIVOLUTION B.V.