1  MAYER BROWN LLP
   EDWARD D. JOHNSON (SBN 189475)
2  wjohnson@mayerbrown.com
   MICHAEL A. MOLANO (SBN 171057)
3  mmolano@mayerbrown.com
   CLIFF A. MAIER (SBN 248858)
4  cmaier@mayerbrown.com
   Two Palo Alto Square, Suite 300
5  3000 El Camino Real
   Palo Alto, CA 94306-2112
6  Telephone:  (650) 331-2000
   Facsimile:  (650) 331-2060
7
8  Attorneys for Plaintiff
   CIVOLUTION B.V.
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CIVOLUTION B.V.,<br><br>            Plaintiff,<br><br>   v.<br><br>DOREMI LABS, INC.,<br><br>            Defendant. | Case No. 2:14-cv-00962-JAK-RZ<br><br>**CIVOLUTION B.V.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND VALIDITY OF U.S. PATENT NO. 7,844,072**<br><br>**Date:**    **May 18, 2015**<br>**Time:**    **8:30 a.m.**<br>**Place:**   **Roybal 750 – 7th Floor**<br>**Judge:**  **John A. Kronstadt** |

## PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................3

    A.   '072 Patent .............................................................................................3

    B.   Accused Product Operation.....................................................................6

        1.   ███████████ ....................................................7

        2.   ███████████. .....................................................8

        3.   ███████████ ....................................................8

        4.   ██████████ .....................................................8

III.   LEGAL STANDARDS ......................................................................................9

    A.   Summary Judgment ................................................................................9

    B.   Infringement ..........................................................................................9

        1.   Literal ...........................................................................................9

        2.   Doctrine of Equivalents ...............................................................9

        3.   Direct and Indirect Infringement.................................................10

    C.   Validity ................................................................................................11

        1.   Anticipation ................................................................................11

        2.   Obviousness ................................................................................11

        3.   Enablement..................................................................................12

IV.   ARGUMENT – INFRINGEMENT....................................................................12

    A.   The IMS-1000 Practices Claims 1, 3 and 4 of the '072 Patent...........12

        1.   Claim 1 ........................................................................................12

            a.   Representing the watermark by a sequence of watermark samples each having a value.....................12

            b.   Dividing An Image Of The Sequence Of Images Into At Least A First And A Second Image Area ..........14

            c.   Modifying The Image In Accordance With A Watermark Sample From The Sequence Of Watermark Samples...............................................14

i

**TABLE OF CONTENTS – Continued**

Page

d.  The Modification Comprising Adding The Watermark Sample Value To The Luminance Value Of Pixels Of The First Image Area And Subtracting The Watermark Sample Value From The Luminance Value Of Pixels Of The Second Image Area To Oppositely Modify The Mean Luminances Of The First And Second Image Areas In Accordance With The Watermark Sample ......14

e.  And For Each Of The Sequence Of Watermark Samples Repeating The Dividing An Image Of The Sequence Of Images And Modifying Of The Image In Accordance With A Watermark Sample From The Sequence Of Watermark Samples Such That Each Watermark Sample Oppositely Modifies The Mean Luminances Of The First And Second Image Areas Of A Different Image Of The Sequence Of Images Until The Entire Watermark Is Embedded ........................................................16

2.  Claim 3 ........................................................................16

3.  Claim 4 ........................................................................18

B.  Doremi's Acts Constitute Infringement ............................................19

1.  Direct Infringement By Testing The IMS-1000 In The U.S. ........................................................................19

2.  Indirect Infringement ........................................................20

a.  Doremi Had Knowledge Of The '072 Patent ................20

b.  Doremi Has Induced Infringement Of The '072 Patent ........................................................................20

c.  Doremi Is Liable For Contributory Infringement............20

V.  ARGUMENT – VALIDITY ........................................................................21

A.  Anticipation/Obviousness ........................................................................21

B.  Enablement ........................................................................24

VI.  CONCLUSION ........................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................9

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. CV-S-00-1116,
    2004 U.S. Dist. LEXIS 27493 (D. Nev. May 28, 2004) ...............................9

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ...............................................................11

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013) ...............................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................9

*Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320 (Fed. Cir. 1985)...........................11

*Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998)..........9

*Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587,
    2015 U.S. Dist. LEXIS 21413 (N.D. Cal. Feb. 20, 2015) ...........................17

*Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318 (Fed. Cir. 2008) .............11

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010)
    *aff'd*, 131 S. Ct. 2238 (2011) ...................................................................10

*Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*,
    26 F.3d 1112 (Fed. Cir. 1994) ...............................................................11

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364 (Fed. Cir. 2003) .........15, 18

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ...............................................................12

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ..............................................12

*Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349 (Fed. Cir. 2008)....................11

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
    806 F.2d 1565 (Fed. Cir. 1986) ...............................................................11

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001)..........................17

*Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989)..........................11

*Shuffle Master, Inc. v. Awada*, No. 2:04-CV-0980,
    2007 WL 4166109 (D. Nev. Nov. 16, 2007)..............................................18

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012)...........................10

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).................10

*Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013)................12

iii

# TABLE OF AUTHORITIES

**Statutes and Rules**                                                                                   **Page(s)**

28 U.S.C. § 1746(2) ...............................................................................................7, 21

35 U.S.C. § 101 .........................................................................................................24

35 U.S.C. § 103(a).....................................................................................................11

35 U.S.C. § 112(a).....................................................................................................12

35 U.S.C. § 271(a).....................................................................................................10

35 U.S.C. § 271(b) ...............................................................................................10, 20

35 U.S.C. § 271(c).................................................................................................11, 20

35 U.S.C. § 282 ..........................................................................................................11

Fed. R. Civ. P. 56 ........................................................................................................9

715931763.10

I.   **INTRODUCTION**

Civolution B.V. ("Civolution") moves for summary judgment of:   (1) infringement of by Doremi Labs, Inc.'s ("Doremi") IMS-1000 product of claims 1, 3, and 4; and (2) validity on the grounds that the asserted claims are not anticipated or rendered obvious by the prior art Doremi asserts and that they comply with the enablement requirement.

**Infringement:**   The Doremi IMS-1000 is a device that integrates into digital media projection systems to embed video watermarks.   The parties do not dispute how the IMS-1000 operates. ███████████████████

████████████████████████████████████████████

█████████████████████████   The IMS-1000 infringes claim 1 of the '072 Patent[1] either literally or under the doctrine of equivalents as follows (with certain claim limitations in abbreviated form):

(1a) <u>representing a watermark by a sequence of watermark samples each having a value;</u>

The Court construed the term "value" with respect to "watermark sample" such that it "is not zero," because a numeric value of zero would not modify pixel luminance. ████ ████ ██ █████ ████ █

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████

████████████████████

████████████████████

---

[1] U.S. Patent No. 7,844,072

█████████████████████████████████████

█████████████████████████████████████

█████████████████████    ██████████████████

████ █ ████████ ████ ██████ ██ ██████ █ █████

█████████████████████████████████████

███████████████████████████████████

(1b) <u>dividing an image into at least a first and second image area;</u>

█████████████████████████████████████

██████████████████████    █████████████████

████████████████████████████

(1c) <u>modifying an image in accordance with a watermark sample;</u>

█████████████████████████████████████

████████████████

(1d) <u>the modification comprising adding the watermark sample value to the
luminance of pixels of the first image area and subtracting the watermark sample
value from the luminance value of pixels of the second image area to oppositely
modify the mean luminances;</u>

The Court construed this limitation such that "the luminance changes need
not necessarily be the same amount in each image area in order to be 'oppositely
modified.'"  Dkt. 43.  In other words, the inventive contribution focuses on the
**direction** rather than the magnitude of luminance modification.  ████████████

█████████████████████████████████████

███████    █████████████████████████████████

██████████████████████████

(1e) <u>repeating the dividing an image ... until the entire watermark is embedded;</u>

█████████████████████████████████████

███████████████████████████████████

<u>Claims 3 and 4</u>

2

1    Dependent claim 3 adds the limitation "wherein the first and second image
2    areas are the upper and lower of an image halves, respectively" while dependent
3    claim 4 adds that the "first and second image areas are the left and right of an
4    image halves, respectively." The Court construed claims 3 and 4 as requiring that
5    each image half "**compris[es]** exactly half of the image's pixels."
6
7
8
9
10

11   **Validity:** Doremi cannot meet its burden to show by clear and convincing
12   evidence that the '072 Patent is invalid based on anticipation, obviousness, or lack
13   of enablement. Only the Kalker reference even arguably relates to temporal
14   watermarking; all of the other references relate to either spatial or transformed-
15   domain watermarking, and would not be combined with Kalker. Even Kalker is
16   missing the key limitation of "oppositely modify[ing] the mean luminances of the
17   first and second image areas." Nor can Doremi prove lack of enablement with
18   respect to the "dividing an image" limitation. As there are only so many
19   reasonable possibilities for dividing an image, a POSITA would understand how to
20   practice the full scope of this limitation without undue experimentation.

21   **II.    BACKGROUND**

22       **A.    '072 Patent**

23       The '072 Patent discloses methods and arrangements for embedding a
24   watermark in motion image signals, such as movies projected in cinemas. (Ex. A[2]
25   ('072 Patent) at 1:7-9.[3]) As explained in the Court's Claim Construction Order

---

26   [2] Unless otherwise stated, all exhibits referenced herein are exhibits to the
     Declaration of Michael A. Molano, filed herewith.
27   [3] Subsequent citations of the '072 Patent will merely be in short form; *i.e.*, 3:10-12
28   denotes the '072 Patent, column 3, lines 10 through 12.

1  (Dkt. 43, "C.C. Order") and the Patent specification, the watermark is embedded to
2  address the "common practice" of "illegal copying of cinema material by means of
3  a handheld video camera." C.C. Order at 1, 1:20-22.

4      The invention of the '072 Patent embeds watermarks temporally.  C.C.
5  Order at 12. Distinct parts of the watermark are embedded in different images of a
6  sequence, such that the portions of the watermark can be combined to form a
7  complete watermark. 2:52-57. The invention greatly improves the work of two
8  prior artists who also worked with temporal video watermarking – Jaap Haitsma
9  and Ton Kalker. 1:40-44. The '072 Patent specification explains that the
10  invention " further improve[s] the prior-art watermark embedding and detection
11  method" by "provid[ing] a watermark embedding and detection scheme, which is
12  robust to de-flickering operations." C.C. Order at 1-2; 2:6-10. In
13  Haitsma/Kalker's prior approach, if the de-flickering tool dims the first image and
14  brightens the second, the average brightness of the two images may be
15  indistinguishable. C.C. Order at 2.

16      By contrast, the invention of the '072 Patent does not introduce flicker, since
17  the average brightness of the entire image is not changed. Instead of modifying the
18  mean luminance of sequential frames, the invention encodes each bit of an
19  embedded watermark by varying in **opposite directions** the mean luminance of
20  two areas within an individual image. C.C. Order at 2; 2:11-20. The specification
21  discloses that an "embedder" "receives a sequences of images or frames." 2:52-54.
22  *See also* C.C. Order at 3 ("The process begins with a sequence of images – such as
23  the frames in a digital motion picture file ...."). The method "includes dividing an
24  image signal into at least a first and a second image area." 2:11-14. One value of
25  a "watermark sample" is embedded in an image by increasing the "mean
26  luminance" of a first image area and decreasing the "mean luminance" of the
27  second area. 2:14-17. The other value of the watermark sample is embedded in
28  the opposite way; *i.e.*, by decreasing the mean luminance of the first image area

4

1  and increasing the mean luminance of the second area. 2:17-21. The "luminance
2  changes need not necessarily be the same amount in each image area." C.C. Order
3  at 18.

4       Civolution asserts claims 1, 3, and 4 of the '072 Patent. Independent Claim 1
5  reads:

6       1. A method of embedding a watermark in a motion image signal, the
7       motion image signal comprising a sequence of images, the method
        comprising:
8
9       representing the watermark by a sequence of watermark samples each
        having a value;
10      dividing an image of the sequence of images into at least a first and a
11      second image area;
        modifying the image in accordance with a watermark sample from the
12      sequence of watermark samples, the modification comprising adding
13      the watermark sample value to the luminance value of pixels of the
        first image area and subtracting the watermark sample value from the
14      luminance value of pixels of the second image area to oppositely
15      modify the mean luminances of the first and second image areas in
        accordance with the watermark sample; and
16      for each of the sequence of watermark samples repeating the dividing
17      an image of the sequence of images and modifying of the image in
        accordance with a watermark sample from the sequence of watermark
18      samples such that each watermark sample oppositely modifies the
19      mean luminances of the first and second image areas of a different
        image of the sequence of images until the entire watermark is
20      embedded.

21      The Court construed the disputed claim terms on November 17, 2014 as
22  follows:

| Term | Construction |
| --- | --- |
| image area | continuous part of an image comprising at least one pixel |
| dividing an image of the sequence of images into at least a first and a second image area | plain and ordinary meaning |

715931763.10

| Term | Construction |
|------|-------------|
| oppositely modif[y/ies] the mean luminances of the first and second image areas | Does not require construction. The luminance changes need not necessarily be the same amount in each image area. |
| watermark sample value | includes any value which is not zero |
| image halves | two parts of the image each comprising exactly half of the image's pixels |

The parties also agreed to the constructions of certain terms. (Dkt. 31.)

For purposes of this Motion, Civolution accepts *arguendo*, the definition of a person of ordinary skill in the art provided by Doremi, namely "that a POSITA would have at least an undergraduate degree in electrical engineering or a related field of study and at least two years of experience in the field of digital signal processing." (Ex. U, ¶¶ 41-42.)

**B.    Accused Product Operation**

The following block diagram describes the structure of the IMS-1000 source code:



(Declaration of Pierre Moulin in Support of Motion for Summary Judgment ("Moulin Decl."), ¶ 29.)

6



1  ▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.*, ¶ 28.)

2  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

3  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4  ▉▉▉ (Moulin Decl., ¶ 35; Expert Report of Dr. Chang Choo on Operation and

5  Structure of Infringing VHDL[4] ("Choo Decl."), ¶¶ 46, 51.) ▉▉▉ ▉▉▉ ▉

6  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ — ▉▉▉▉▉▉▉ (Moulin

7  Decl., ¶ 35; Choo Decl., ¶¶ 43.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

8  ▉▉▉▉▉▉▉▉▉▉▉▉▉ (Moulin Decl., ¶ 35.) ▉▉▉▉▉

9  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

10  (*Id.*) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

11  ▉▉▉▉▉▉ (Choo Decl., ¶¶ 38-43.) ▉▉▉▉▉▉▉t

12  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉ ▉▉▉▉▉

13  (Moulin Decl., ¶ 35.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

14  ▉▉▉ (*Id.*) ▉▉▉▉▉▉▉▉▉▉▉

15  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

16  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

17  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

18  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

19  (*Id.*) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

20  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

21  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

22  (Moulin Decl., ¶ 35.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

23  ▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.*) The operation will now be described

24  in further detail.

25          **1.**   ▉▉▉▉▉▉▉▉

26  ▉▉▉ ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉ ▉▉▉

27  ───────────
[4] While this document is titled a report, it is a declaration by Dr. Choo (*see* page

28  56). 28 U.S.C. § 1746(2). It is attached as Ex. PP to the Molano Declaration.



1   ████████████████████████ (Choo

2   Decl., ¶¶ 47-48.) ████████████████

3   ████████████ (*Id.*, ¶¶ 27, 47-48, 51.)

4   **2.** ████████

5   ████████████████████████████████

6   ████████ (*Id.*, ¶ 38; Moulin Decl., ¶ 43.) ████

7   ████████████████████████████████

8   ████████████████████████ (Choo

9   Decl., ¶¶ 43-44.) ████████████████

10  (*Id.*, ¶ 42.) ████████████████████

11  ████████████████████████████ (*Id.*, ¶¶ 39-

12  42.) ████████████████████████

13  "0" in the opposite corners, as follows (*id.*, ¶ 42):

14  ████████

15  **3.** ████████

16  ████████████████████████████████

17  ████████████ (*Id.*, ¶¶ 33, 51-55.) ████

18  ████████████████████████████████

19  ████████████████████ (*Id.*, ¶¶ 52-55.)

20  **4.** ████████

21  ████████████████████████████████

22  ████ (*Id.*, ¶ 30.) ████████████████

23  ████████████████████████████████

24  ████████████████████████ (*Id.*, ¶¶ 31-

25  32.) ████████████████████████

26  ████████████████████████ (*Id.*, ¶ 34.)

27  ████████████████████████████████

28



*(Id.)*

These signals are combined to produce the following results:

*(Id.*, ¶ 32.)   In the above table, +X indicates that the strength is added, and –X

*(Id.*, ¶ 33.)

*(Id.*, ¶ 34.)                                                            *(Id.*, ¶¶ 32-

33, 55.)                                                            *(Id.,*

¶ 50.)

*(Id.*, ¶¶ 46-51.)

## III.  LEGAL STANDARDS

### A.  Summary Judgment

The Court is familiar with the summary judgment standard.  Fed. R. Civ. P.

56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B.  Infringement

#### 1.  Literal

Where "the composition of the allegedly infringing process or product is

undisputed," as it is here, "literal infringement collapses into claim construction—a

matter of law—amenable to summary judgment." *Aspex Eyewear, Inc. v. E'Lite

Optik, Inc.*, No. CV-S-00-1116, 2004 U.S. Dist. LEXIS 27493, at **5-6 (D. Nev.

May 28, 2004)  (quoting *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d

1325, 1332-33 (Fed. Cir. 1998)).

#### 2.  Doctrine of Equivalents

Under the doctrine of equivalents, this Court can find infringement, despite

9

the lack of literal infringement, when there is equivalence between the elements of the accused process and the claims of the patent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial. One way of proving infringement under the doctrine of equivalents is to show, for each claim limitation, that the accused product 'performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346-47 (Fed. Cir. 2013) (emphasis added, citations omitted).

### 3. Direct and Indirect Infringement

Direct infringement is established when an unauthorized[5] infringer makes, uses, sells, offers for sale, or imports in the United States something that practices each limitation of at least one claim of the asserted patent during the term of that patent. 35 U.S.C. § 271(a).

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (2011)).

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for

---

[5] Doremi does not contend that it has authority to practice the claims of the '072 Patent. (*See, e.g.*, Dkt. 17 (Doremi's Answer to Civolution's Complaint.)

use in an infringement of such patent.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)).

### C. Validity

A patent is presumed to be valid, and the party claiming invalidity has the burden of demonstrating by clear and convincing evidence facts compelling a conclusion of invalidity. 35 U.S.C. § 282; *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 323-24 (Fed. Cir. 1985). Only if Doremi presents a prima facie case of invalidity, then Civolution may have to come forward with rebuttal evidence. *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986).

#### 1. Anticipation

An invention is anticipated only if every limitation "is shown in a single prior art reference." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989). Further, "[e]very element of the claimed invention must be literally present, arranged as in the claim" and "[t]he identical invention must be shown in as complete detail as is contained in the patent claim." *Id.* (citations omitted). "While anticipation is a question of fact, 'it may be decided on summary judgment if the record reveals no genuine dispute of material fact.'" *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (quoting *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008)).

#### 2. Obviousness

A patent may be found invalid despite not being anticipated as prior art under Section 102(a), "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2004). In

11

making this determination, " it will be necessary for a court to look to … whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) (citations omitted).

### 3.   Enablement

Under the enablement requirement, "A patent's specification must describe the invention and 'the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same.'" *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013) (quoting 35 U.S.C. § 112(a) (2012)). Claims only fail this requirement when "at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation." *Id.*

## IV.   ARGUMENT – INFRINGEMENT

### A.   The IMS-1000 practices claims 1, 3 and 4 of the '072 Patent

#### 1.   Claim 1

##### a.   Representing the watermark by a sequence of watermark samples each having a value

The Court construed the term "value" with respect to this claim limitation to require that watermark samples each have a value that is not zero, reasoning that "adding a watermark sample of zero to the luminance value of pixels of one image area and subtracting that value from the luminance value of pixels of the other image area would not be modifying the image." C.C. Order at 19.

715931763.10

(Choo Decl., ¶¶ 46-51.) (Moulin Decl., ¶ 37.)

(Ex. U, ¶ 62.)

(Moulin Decl., ¶ 37.)

(Id.)

(Id.)

(Id.)

Moreover, even if the Court finds that the IMS-1000 does not literally infringe, it infringes under the doctrine of equivalents.

(Id., ¶ 39.)

(Id.)

(Id., ¶ 40.)

(Id.)

(Id.)

715931763.10

1 ████████████ ██ ██ ██████ ████████████████████████████████████

2 ██████████████████████████████████████████ *(Id.,* ¶ 41.) ███████

3 ██████████████████████████████████████████████████████████████

4 ██████████████ *(Id.)*

5   Moreover, the result is identical, let alone substantially similar.  *(Id.,* ¶ 42.)

6 ██████████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████████████

8 ████████████████████████████████████ *(Id.)*

9   **b.**   **dividing an image of the sequence of images into at least a first and a second image area**

10

11 ██████████████████████████████████████████████████████████████

12 █████████ *(Id.,* ¶ 43.) ███████████████████████████████████

13 ███████ *(Id.)* ███████████████████████████████████████████

14 ██████████ *(Id.)* ████████████████████████ █████████ ██ ████████

15 ██████████████████████████████████████████████████████████████

16 █████████████████████████ *(Id.)* ███████████████████████████

17 ██████████████████████████████████████████████████████████████

18 *(Id.)*

19   **c.**   **modifying the image in accordance with a watermark sample from the sequence of watermark samples**

20

21 ██████ ██████ ████████████████████████████████████████████████

22 ███████████████████████████████████████████ *(Id.,* ¶ 44.) ████

23 █████████████ ██████████ ████████████████████ █████████ ████████

24 ██████████████████████████ █████████████████ ████████████ ████████

25 ██████████████████████████ *(Id.)*

26   **d.**   **The modification comprising adding the watermark sample value to the luminance value of pixels of the first image area and subtracting the watermark**

27

28

14

sample value from the luminance value of pixels of the
second image area to oppositely modify the mean
luminances of the first and second image areas in
accordance with the watermark sample

(Id., ¶ 45.)

(Id.)  This is shown in the following

IMS-1000 source code excerpt:



(Ex. GG.)

(Choo Decl., ¶¶ 25-26.)

(Id., ¶ 34.)

6

First, the Court
rejected Doremi's argument that "oppositely modify" means modifying different
pixels in opposite directions by the same magnitude. (C.C. Order at 10.)

(Moulin Decl. ¶ 48.)

(Id.)  Third, the claim is a "comprising" claim,
which does not preclude additional operations. Invitrogen Corp. v. Biocrest Mfg.
L.P., 327 F.3d 1364, 1368 (Fed. Cir. 2003).

15

1 ████████████████████████ ███ ████████████ *(Id.,* ¶ 34.) ████████

2 ████████████████████████████████████████████

3 ████████████████████████████████ ██ █████████████████████

4 ███████████████ ███ ███████████████ *(Id.,* ¶ 34.) ████████████

5 ██████████████████████████████████████

6 ██████████████████████████████████████████

7 ████████████████████████████████████████████

8 ██████████████████████████████████████████

9 (Moulin  Decl.,  ¶ 50.) ██████████████████████████████

10 ██████████████████████████████████████████

11 █████  *(Id.)* ████████████████████████

12 ████████████████████████████  *(Id.)* ████████████████

13 ██████████████████████████████████████████

14 ██████████████████████████████████████████████  *(Id.)*

15 ██████████████████████████████████████████

16 ████████████████████████  *(Id.)*

      e.    **And for each of the sequence of watermark samples repeating the dividing an image of the sequence of images and modifying of the image in accordance with a watermark sample from the sequence of watermark samples such that each watermark sample oppositely modifies the mean luminances of the first and second image areas of a different image of the sequence of images until the entire watermark is embedded**

22 ████████████████████████████████████████

23 ██████████████████████  (Moulin  Decl.,  ¶ 51.) ████████

24 ████████████████████████████████████  (Choo

25 Decl., ¶ 50.)

26     **2.   Claim 3**

27     Claim 3 recites: "The method of claim 1, wherein the first and second image

28 areas are the upper and lower of an image halves, respectively." Doremi infringes

claim 3 literally or under the doctrine of equivalents.



(Moulin Decl., ¶ 52.)

The parties agreed that the term "image" has a plain and ordinary meaning. C.C. Order at 10; Dkt. 31 and A-4 to -6. Thus, it is entitled to its "full range" of ordinary meaning as understood by one of skill in the art. *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587, 2015 U.S. Dist. LEXIS 21413, at *35 (N.D. Cal. Feb. 20, 2015); *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). One of ordinary skill would understand that while a frame is an "image," a portion of a frame can also be an "image." (Moulin Decl., ¶ 52.) The specification makes clear that the terms "frame" and "image" are not coextensive: "[t]he embedder receives a sequences of images **or** frames…." 2:52-54 (emphasis added); *see also* 3:44-46. Further, the Court appeared to recognize this distinction in explaining that the patented process "begins with a sequence of images – **such as** the frames in a digital motion picture file…." C.C. Order at 3 (emphasis added).

(Moulin Decl., ¶ 53.)

17

1　████████████████████████████████████████████

2　████████████　This is because claim 1 is an open-ended "comprising" claim that

3　does not exclude additional operations. *See Invitrogen Corp. v. Biocrest Mfg.,*

4　*L.P.,* 327 F.3d 1364, 1368 (Fed. Cir. 2003); *Shuffle Master, Inc. v. Awada,* No.

5　2:04-CV-0980, 2007 WL 4166109, at **12-14 (D. Nev. Nov. 16, 2007). Indeed,

6　the Court's construction of this claim contains the term "comprising," which

7　modifies "exactly half of the image's pixels." C.C. Order at 25.

8　　　　Even if the Court were to determine that the IMS-1000 does not literally

9　infringe, it infringes under the doctrine of equivalents because the differences

10　between the claimed dividing operation and the IMS-1000 dividing operation are

11　insubstantial.　(Moulin Decl., ¶ 54.)　████████████████████████

12　████████████████████████████████████████████

13　(*Id.,* ¶ 55.)　████████████████████████████████

14　　　　　　　　　　　　　　　　　　　　　　(*Id.*)　████████

15　████████████████████████████████████████████

16　████████████████　(*Id.,* ¶ 56.)　The '072 Patent specification describes

17　"robustness" to such "distortions" as being a key requirement of watermarking

18　algorithms.　1:31-40.

19　████████████████████████████████████████████

20　████████████████████████　(*Id.,* ¶ 57.)

21　　　　**3.　Claim 4**

22　　　　Claim 4 recites: "The method of claim 1, wherein the first and second image

23　areas are the left and right of an image halves, respectively." The only difference

24　between this claim and claim 3 is that the first and second image areas are the "left

25　and right of an image halves" rather than the "upper and lower of an image

26　halves." As such, the explanation above directly applies.　████████████

27　████████████████████████████████████████████

28　████████████████████████████　(*Id.,* ¶ 58.)



**B.   Doremi's acts constitute infringement**

      **1.   Direct infringement by testing the IMS-1000 in the U.S.**

As shown above, each limitation of the asserted claims of the '072 Patent is performed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Doremi has therefore directly infringed by testing that device in the United States, as this is a "use" of the claimed invention.

(See Ex. V at DOREMI006972.)

(See Exs. W, X at DOREMI011138-11141; Ex. Y (DOREMI011087-11093) at DOREMI011087-11090.)

(See Ex. Z at DOREMI006986-6987.)

(See, e.g., Ex. AA at DOREMI007375-7376.)   The DCI

---

[7] Doremi's counsel has represented that Doremi produced in this case the only version of the watermarking source code that has shipped with the IMS-1000 device. (See Ex. EE .)  This was the source code on which infringement analyses in this case were based.
[8] See Ex. FF.

CIVOLUTION'S MEMO ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00962-JAK-RZ

715931763.10

1    specifications require "Forensic Marking," which includes watermarking (*see, e.g.*,

2    Ex. BB at 82, 117-129 (Digital Cinema System Specification)), and Doremi

3    indicates that the IMS-1000 device is DCI compliant (*see, e.g.*, Ex. CC (IMS-1000

4    product brochure); Ex. DD at 27 (IMS-1000 Installation and User Manual)).

5              **2.    Indirect infringement**

6         Doremi is also liable as an indirect infringer, either by inducing infringement

7    or acting as a contributory infringer. *See* 35 U.S.C. §§ 271(b) & (c).

8              **a.    Doremi had knowledge of the '072 Patent**

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████████████████████████████████

12             **b.    Doremi has induced infringement of the '072 Patent**

13        With Doremi's admitted knowledge of the '072 Patent, Doremi knew or

14   should have known that its actions would induce infringement at least by its

15   customers. Doremi's brochures and manual for the IMS-1000 device demonstrate

16   that Doremi intends for its customers to use the watermarking function of the

17   device. (*See, e.g.*, Ex. CC (indicating "Doremi Forensic Watermarking for audio

18   and video" as a feature of the device)); Ex. DD at 28, 255, and 259-260.) ████

19   ████████████████████████████████████████████████████

20   ████ (*See, e.g.*, Ex. HH at 26:1-7; 29:9-30:1; 30:22-24[9].) ██████████

21   ████████████████████████████ ██████████████ (*see,*

22   *e.g.*, Ex. KK) ████████████████████████████████ (*see,*

23   *e.g.*, Ex. HH at 26:1-7; 29:9-30:1; 30:22-24), ██████████████████

24             **c.    Doremi is liable for contributory infringement**

25        Similarly, Doremi is liable for contributory infringement by selling, offering

26

27   [9] This testimony relates to another digital cinema player product like the IMS-
     1000.

28   [10] *See, e.g.*, Ex. EE; Ex. JJ at DOREMI010061.

1   to sell or importing into the United States the IMS-1000 device used by customers
2   to perform watermarking functions.  As stated above, the IMS-1000 device is used
3   to practice the patented method of the asserted claims of the '072 Patent, and
4   therefore is a material part of the patented invention.  Also, the IMS-1000 device is
5   not a staple article or commodity of commerce capable of substantial non-
6   infringing use.  Doremi's own product brochure and user manual make clear that
7   the watermarking function is a standard part of the IMS-1000.  (*See, e.g.*, Ex. CC
8   (indicating "Doremi Forensic Watermarking for audio and video" as a feature of
9   the device); Ex. DD at 28, 255, and 259-260.)  ████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████ (*See, e.g.*, Ex.
12  HH at 26:1-7; 29:9-30:1; 30:22-24; Ex. LL at DOREMI006973-6974.)  Likewise,
13  given Doremi's admitted knowledge of the '072 Patent, when Doremi sells, offers
14  for sale, or imports into the United States the IMS-1000 device with Doremi's
15  VHDL, Doremi knows that the device is especially made or adapted for use in an
16  infringing method.  Therefore, as above, ████████████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████ Doremi is a contributory infringer.

19  **V.    ARGUMENT – VALIDITY**

20      **A.    Anticipation/Obviousness**

21      As a matter of law, Doremi cannot prove by clear and convincing evidence
22  that the '072 Patent is invalid as anticipated or obvious.  None of Doremi's
23  references discloses or suggests, alone or in combination, all of the limitations of
24  the asserted claims.  (*See* 3/12/2015 Rebuttal Report of Pierre Moulin Regarding
25  Validity of U.S. Patent No. 7,844,072[11] ("3/12/15 Moulin Decl.") at ¶¶ 69-343.)
26  The following are the references Doremi relies on to support its contention that the

27  ───────────────────
[11] While this document is titled a report, it is a declaration by Dr. Moulin (*see* page
28  105). 28 U.S.C. § 1746(2). It is attached as Ex. QQ to the Molano Declaration.

'072 Patent is invalid as anticipated or obvious:  Primary: Kalker (Ex. B); Rhoads (Ex. C); Yoshiura (Ex. D); Busch (Ex. E); Wolfgang (Ex. F); Thiemert (Ex. G);[12] Echizen (Ex. H); and Swanson (Ex. I); Secondary: Van Overveld (Ex. J); Pitas (Ex. K); Muratani (Ex. L); Langelaar (Ex. M); Hartung (Ex. N); Cox (Ex. O); Chang (Ex. P);Bruyndonckx (Ex. Q); Bender Techniques (Ex. R); and Bender '285 (Ex. S).[13][14]

The initial attempts at watermarking movies with images involved embedding the entire watermark image in each frame of a movie, using either "spatial" or "transformed-domain" encoding. (*See, e.g.*, 3/12/15 Moulin Decl. at ¶¶ 11, 18.)  The '072 Patent is different in that it is directed to embedding watermarks temporally.  *See, e.g.*, C.C. Order at 12 (observing that the "claimed invention" "embeds the watermark in the temporal axis").  This means that the entirety of the watermark is embedded over the course of time, with portions of the watermark being embedded in different images, and the portions added together to form the entire watermark.

Of Doremi's references, only Kalker relates to embedding a single watermark sample into each of multiple sequential images (*i.e.*, temporal

---

[12] Importantly, the Thiemert reference is not actually prior art to the '072 Patent. Doremi appears to contend that the publication date of Thiemert was 2001, but in actuality, it was presented at the Euromicro Conference (Aug. 31-Sept.3, 2004), and was not published until 2004 (*see* Ex. MM).
[13] These are the only references Doremi disclosed in its invalidity contentions. Doremi failed to provide final invalidity contentions and otherwise failed to comply with this Court's rules regarding such contentions (*see* S.P.R. 4.2.2.).  To the extent Doremi attempts to rely on the papers "A Video Watermarking System for Broadcast Monitoring" by Kalker, et al., and "Secure spread spectrum watermarking for images, audio and video" by Cox et. al. as invalidating prior art, such papers were not disclosed until the February 19, 2015, report of Doremi's expert, Dr. Memon, were not disclosed in Doremi's invalidity contentions, and should be excluded from consideration pursuant to this Court's rules. (*See* Ex. NN (Doremi's Invalidity Contentions); Ex. T.)  Additionally, for the same reasons, any purported reliance by Doremi on any references not disclosed until Doremi's April 10, 2015, Supplemental Responses to Civolution's Interrogatories (*see* Ex. II at 18-20), should be excluded.
[14] Due to Doremi's failure to comply with S.P.R. 4.2.2., Civolution reserves the right to move to strike the Expert Report of Dr. Memon regarding invalidity.

watermarking).  (3/12/15 Moulin Decl., ¶ 77.)  Every other reference, at best, is directed to storing the entirety of a watermark in an image, oftentimes not even an image in a sequence of images.  (*Id.*)  Every other reference relies on spatial and/or transformed domain embedding, and therefore is not directed to the same issue as the '072 Patent and are missing key limitations (*e.g.*, the "repeating" limitation) of the asserted claims of the '072 Patent as a result.  (*Id.* at ¶ 78.)

Even the Kalker reference, however, does not disclose or suggest necessary limitations of the '072 Patent.  For example, in Kalker, the mean luminance of each frame is modulated by the watermark.  (*Id.* at ¶ 82; Ex. B at DOREMI000439 at 2:43-50.)  **All** of the pixels in an image are either increased or decreased in luminance in accordance with the watermark bit.  (3/12/15 Moulin Decl., ¶ 82; Ex. B at DOREMI000439 at ll. 43-50.)  This adds flicker to the motion picture.  (3/12/15 Moulin Decl., ¶ 82; 1:40-54.)  The '072 Patent builds upon the Kalker invention by modifying the luminance of two areas of the image in opposite directions.  (3/12/15 Moulin Decl., ¶ 83; 2:6-20, 6:63-67.)  This is reflected in the claim language that calls for "oppositely modify[ing] the mean luminances of the first and second image areas."  (3/12/15 Moulin Decl., ¶ 83; 8:43-44.)  Unlike Kalker, therefore, the mean luminance of a frame changes very little (or not at all), which reduces flicker.  (3/12/15 Moulin Decl., ¶ 83.)  The '072 Patent therefore includes and claims additional steps not disclosed or suggested by Kalker.  (*Id.*)  Consequently, Doremi cannot meet its burden to prove anticipation.

Because Kalker does not disclose or suggest each limitation of the asserted claims of the '072 Patent, and because Kalker is the only reference directed to temporal watermarking, Doremi must necessarily argue obviousness based on some combination of Kalker with other references.  Notably, however, a POSITA would not combine Kalker with Doremi's other references.  (*See, e.g.*, 3/12/15 Moulin Decl., ¶¶ 74-75, 98, 245-246, 282, 327.)  Indeed, the '072 Patent teaches

23

away from combinations with anything other than temporal watermarking,[15] which renders combinations between Kalker and the spatial and transformed domain references (all of Doremi's remaining references) improper.   (3/12/15 Moulin Decl., ¶ 74.)   At a minimum, Doremi cannot meet its burden to show how a POSITA would know how to properly combine Kalker with any still image with a still image-based scheme. (*Id.* at ¶ 75.)

Therefore, because Kalker – the only reference directed to temporal watermarking – does not disclose or suggest each limitation of the '072 Patent, and the other references cannot be combined with Kalker to fill in the limitations missing from Kalker, Doremi cannot prove invalidity by clear and convincing evidence, and summary judgment in favor of Civolution is proper.

## B.   Enablement[16]

Doremi only contends that the phrase "dividing an image of the sequence of images into at least a first and second image area" is not enabled. (*See* Ex. T at ¶¶ 380-387.)   But the '072 Patent provides information and constraints regarding how to "divide" in the context of the invention.   (3/12/15 Moulin Decl., ¶¶ 351, 353.)   For example, the specification and claims explicitly discuss dividing an image into upper and lower halves, or into left and right halves. (*See, e.g.*, *id.*; 2:57-59, 3:46-50, 6:63-65, claims 3 and 4.)   Moreover, a POSITA would understand that the larger the image area, the more robust the watermark will be. (3/12/15 Moulin Decl., ¶ 352.)   Therefore, in order to make each image area resulting from a division as large as possible, a POSITA would realize that it

---

[15] *See, e.g.*, 1:44-46 ("[t]he robustness to geometric distortions is achieved by exploiting **only the temporal axis** to embed the watermark") (emphasis added).

[16] Doremi has limited the bases of its invalidity arguments to those set forth in Memon's expert report, which contains only anticipation, obviousness, and lack of enablement. (*See* Ex. II (Supplemental Responses to Civolution's Interrogatories) at 18-20; Ex. T (2/19/2015 Memon Report).   To the extent Doremi attempts to advance any other bases for invalidity, *e.g.*, pursuant to 35 U.S.C. § 101, such attempt should be foreclosed, and Doremi can present no evidence to support such a contention.   Therefore summary judgment is proper against Doremi.

would make the most sense for the image areas to be generally of equal size. (*Id.*)[17] This is confirmed by Jaap Haitsma, a POSITA, who testified that, as an engineer having reviewed the specification, he would know to "divide the image into large areas to be camcorder robust," and that a 50/50 division is the most robust. (Ex. OO at 48:20-49:9; 117:3-8.) Further, each such area should be dense (*e.g.*, a rectangular area, as opposed to alternative designs involving, for example, thin, elongated areas) in order to better resist geometric distortions. (3/12/15 Moulin Decl., ¶ 352.) Additionally, a POSITA would understand that, in the context of the Patent disclosure, the desire is to make the average luminance of the frame stay essentially the same, and therefore would understand that it would be desirable to make the two divided parts of the image of the same size when they are to be oppositely modulated. (3/12/15 Moulin Decl., ¶ 354.) To maintain invisibility to the viewer, it would be undesirable to divide the image into very different sizes because, when oppositely modulated, the differences would be more noticeable. (*Id.*) Therefore, the asserted claims of the '072 Patent are enabled. (3/12/15 Moulin Decl., ¶ 350.)

## VI.   CONCLUSION

For the foregoing reasons, summary judgment should be granted.

Dated: April 20, 2015

Respectfully submitted,

MAYER BROWN LLP

/s/ *Michael A. Molano*
Michael A. Molano

*Attorneys for Plaintiff Civolution B.V.*

---

[17] Indeed, the Court construed the term "image halves" in dependent claims 3 and 4 of the '072 Patent to comprise "exactly half of the image's pixels." (*See* C.C. Order at 25).

25