MAYER BROWN LLP
EDWARD D. JOHNSON (SBN 189475)
wjohnson@mayerbrown.com
MICHAEL A. MOLANO (SBN 171057)
mmolano@mayerbrown.com
CLIFF A. MAIER (SBN 248858)
cmaier@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile:   (650) 331-2060

Attorneys for Plaintiff
CIVOLUTION B.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CIVOLUTION B.V.,<br><br>               Plaintiff,<br>     v.<br><br>DOREMI LABS, INC.,<br><br>               Defendant. | Case No. 2:14-cv-00962-JAK-RZ<br><br>**CIVOLUTION B.V.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND VALIDITY OF U.S. PATENT NO. 7,844,072**<br><br>Date:     May 18, 2015<br>Time:    8:30 a.m.<br>Place:    Roybal 750 – 7th Floor<br>Judge:   John A. Kronstadt |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. ARGUMENT | 2 |
|    A. The IMS-1000 Uses Watermark Sample Values | 2 |
|    B. The IMS-1000 Practices the "Dividing" Limitation | 3 |
|    C. The IMS-1000 Practices the "Adding and Subtracting" Limitation | 4 |
|    D. The IMS-1000 Infringes Claims 3 and 4 | 6 |
|    E. Indirect Infringement | 8 |
| III. ARGUMENT – VALIDITY | 8 |
|    A. Anticipation/Obviousness | 8 |
|    B. Enablement | 10 |

# TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   616 F.3d 1283 (Fed. Cir. 2010) ............................................................................ 7

*B-K Lighting, Inc. v. Vision3 Lighting*,
   930 F. Supp. 2d 1102 (C.D. Cal. 2013) ............................................................... 2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ............................................................................................ 6

*Freedman Seating Co. v. Am. Seating Co.*,
   420 F.3d 1350 (Fed. Cir. 2005) ........................................................................... 3

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   327 F.3d 1368 (Fed. Cir. 2003) ........................................................................... 5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................... 4

*Regents of the Univ. of Cal. v. Dako A/S*,
   517 F.3d 1364 (Fed. Cir. 2008) ........................................................................... 6

*Ridgel v. United States*, No. SACV 12-0071 JGB (MLGx),
   2013 WL 2237884 (C.D. Cal.

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................................. 2

**Statutes and Rules**              **Page(s)**

35 U.S.C. § 271 ........................................................................................................ 8

35 U.S.C. § 282(b)(3) ............................................................................................ 10

Federal Rule of Civil Procedure 9(b) ....................................................................... 2

## I.   INTRODUCTION

Doremi does not dispute that the logical state of the ▮ ▮ — is the watermark sample. Rather, Doremi conflates this sequence of logical values — which forms the watermark — with the watermark sample values, which are ▮ ▮ ▮ ▮, is the watermark sample value. The fact that ▮ ▮. Rather, (1) the patent specifically discloses ▮ ▮; and (2) regardless, the "comprising" claims do not preclude additional operations. Further, ▮ meets the "dividing" limitation, which is accorded its plain and ordinary meaning. Moreover, Doremi does not dispute that it has committed acts of direct infringement, and its acts of indirect infringement have been clearly established.

Doremi has not shown by clear and convincing evidence that the prior art references anticipate or render obvious the '072 patent. Nearly all of them are directed to issues other than temporal watermarking, and a POSITA would not combine their teachings (mostly directed to spatial or DCT encoding) with temporal watermarking – the subject matter of the '072 patent. Further, Doremi's enablement argument fails because, quite simply, Doremi does not even contend that the act of division – whatever the image or proportions – is a difficult one for a POSITA, such that it could not be done without undue experimentation. Instead, Doremi essentially argues that a POSITA would not know how to divide the image in a way that works best for robustness, but this ignores the plain language of the claim. In any event, a POSITA would understand in the context of the disclosures of the '072 Patent how to best divide in order to be the most robust.

Finally, Civolution's positions were in fact timely disclosed to Doremi, or are otherwise rebuttals to Doremi's non-infringement positions, as explained in

1  detail in Civolution's Responses to Doremi's Objections.[1]

## II. ARGUMENT

### A. The IMS-1000 Uses Watermark Sample Values

███████████████████████████████████. (Separate Statement of Genuine Issues of Dispute in Support of Doremi's Opposition ("Sep. Stmt."), ¶ 45.) ███████████████████████████████████████████████████ (*Id.*, ¶¶ 17, 19.)

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

That ███████████████████████████████████████ does not preclude infringement. In fact, the Patent discloses a █████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████. '072 Patent, 3:22-35; *see also* C.C. Order at 5. Adopting Doremi's non-infringement argument would exclude a preferred embodiment, which "is rarely, if ever, correct and would require highly persuasive evidentiary support." C.C. Order at 7 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

Alternatively, the IMS-1000 infringes under the doctrine of equivalents. ███████████████████████████████████████████████████████ ███████████████—███████████████████████████████████

████ Significantly, Doremi failed to address Civolution's argument that ████

---

[1] Nor does *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102 (C.D. Cal. 2013) apply. *B-K Lighting* involved an accused infringer's failure to plead inequitable conduct, which must be pled with particularity under Federal Rule of Civil Procedure 9(b), in its answer, affirmative defenses, or counterclaims. *Id.* at 1132-33.

1  ██████ ██████ ██████ ██ ██████ ██████ ██████
2  ████████████████████████████████████████████████
3  ████████████████████████████████████████████████
4  ████████████████████████████████████████████████.

Doremi's argument that Civolution never addresses the "core function" of a watermark – to provide forensic information, be detectable, and remain detectable – misses the mark. First, the all elements rule requires that the doctrine of equivalents be addressed on an element-by-element basis, rather than focusing on the invention as a whole. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). ██████████

██████████████████████████████████████████████
██████████████████  ████████████████████████
██████████████████████████████████████████████

██████ Second, the claims do not recite providing forensic information in a detectable, robust fashion.[2] Nevertheless, Doremi cannot dispute that the IMS-1000 does this because it is DCI compliant. (*See* Ex. B [DCI Spec, p. 120], § 9.4.6.1.2; Civolution's Sep. Stmt. ISO Motion for Summary Judgment, ¶ 10.)

**B.     The IMS-1000 Practices the "Dividing" Limitation**

It is undisputed that █████████████████████████
████████████████████████████████████████████████
████████████████████████████████ (Sep. Stmt., ¶¶ 24-29, 38.) ██
████████████████████████████████████.
████████████████████████████████████████
████████████████████████████████████ In doing so, Doremi attempts

---

[2] Doremi mischaracterizes Dr. Moulin's deposition testimony in an effort to import a limitation that the watermark be robust. Dr. Moulin clearly testified that claim 1 does not require this. (Ex. A (Moulin Tr.), 152:11-23, 155:6-9, 184:11-17.) Unless otherwise stated, Exhibits referenced herein are attached to the Declaration of Michael A. Molano, filed herewith.

1  to limit this function to that disclosed in a preferred embodiment. But this is an
2  invitation to err by importing a limitation from the specification into the claims.
3  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).
4      Moreover, ███████████████████████████████████████,
5  ███████████████████████████████████████████████. Specifically, Doremi
6  contends, through its expert, Dr. Memon, that a prior art reference disclosing a
7  scaling factor that is calculated on a per-pixel basis discloses the "dividing"
8  limitation of the '072 Patent. (4/20/2015 Molano Decl. Ex. T (Memon Report),
9  ¶¶ 191-93.)
10     The appropriate question is not whether pixel data is physically divided,
11 which makes no sense given one does not physically divide electronic data.
12 Rather, one categorically divides data through computing operations. Even under
13 Doremi's canvas analogy, the canvasses have been categorically divided into black
14 and white. Further, Doremi's analogy would be more accurate if canvasses on the
15 left side of the room were painted black, and canvasses on the right painted white.
16 ███████████████████████████████████████████████████████████████
17     Finally, Doremi again resorts to mischaracterizing and selectively quoting
18 deposition testimony, by contending that Dr. Choo admitted that the IMS-1000
19 does not divide. ████████████████████████████████████████████
20 ████████████████████████████████████████████████████. (Ex. C
21 (Choo Tr.), 19:7-20:16, 27:2-35:7.)
22     **C.    The IMS-1000 Practices the "Adding and Subtracting" Limitation**
23 ███████████████████████████████████████████████████████████████
24 ███████████████████████████████████████████████████████████████
25 ███████████████████████████████████████████████████████████████
26 ███████████████████████████████████ (Sep. Stmt., ¶¶ 17-19.) Again,
27 what is important (and novel) is the fact that luminance in a given image is
28 changed in both directions, rather than the magnitude. The Court recognized this

4

1 by not requiring that luminance changes be the same amount in each image area in
2 order to be oppositely modified. C.C. Order at 18.
3     Further, to the extent Doremi contends that ████████████████
4 ████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████.
6 '072 Patent, 3:22-35. Again, the Patent discloses ██████████████
7 ████████████████████████████████████████████████████████
8 ████████████████████████████████████. '072 Patent, 3:22-35; *see*
9 *also* C.C. Order at 5. Nor can the IMS-1000 escape infringement of this
10 "comprising" claim by merely performing ██████████████████████
11 ██████████████████████ See *Invitrogen Corp. v. Biocrest Mfg.,*
12 *L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003).
13 ████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████
15 ████████████████████████████████████. (Sep. Stmt., ¶ 41.) ██
16 ████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████-
18 ██████████████████████████. (*Id.*, ¶ 42.) This is because, as is likewise
19 undisputed, adding a greater value of, say X, is equivalent to adding 1 + (X-1).
20 (*See* Sep. Stmt., ¶ 43.)
21     Doremi's argument that ████████████████████████████ is a
22 straw man. Civolution does not contend that the logical values of "1" and "0" are
23 added/subtracted, but rather that ██████████████████████████████
24 ████████████████. Again, Doremi mischaracterizes deposition testimony that
25 involved ████████████████████████████████████████. (Ex. A
26 (Moulin Tr.), 110:15-111:24, 217:17-18.)
27     Regardless, the IMS-1000 infringes under the doctrine of equivalents
28 because ████████████████████████████████████████─████

1  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌
2  ▌▌▌▌▌▌▌▌▌▌▌. In contesting this, Doremi relies on two faulty arguments.

First, Doremi again mischaracterizes deposition testimony, claiming that Dr. Moulin ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (Opp. at 5.) However, Dr. Moulin's testimony regarding whether Doremi's hypothetical situation would be "acceptable in the marketplace" does not go to the legally appropriate test, which is whether the limitation's **result** is substantially the same as what the IMS-1000 does. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

Second, Doremi's prosecution history estoppel argument fails because prosecution history estoppel does not "foreclose claims of equivalence for aspects of the invention that have only a peripheral relation to the reason the amendment was submitted." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 738 (2002). Here, claim 1 was amended in order to traverse prior art rejections based on claiming modification to a "global property." The amendment narrowed claim 1 to recite a "luminance value." (Dkt. 57-13, p. 3 ("It is obvious to one skilled in the art to modify the global property as taught by Kalker in Haitsma divided areas in order to achieve sufficient robustness and increase in copy protection.").) This did not implicate the "adding to/subtracting from" portion of this limitation. *See Regents of the Univ. of Cal. v. Dako A/S*, 517 F.3d 1364, 1376 (Fed. Cir. 2008) (presumption of surrender rebutted if amendment "bore no more than a tangential relation to the equivalent at issue"); C.C. Order at 18 ("Thus, although it is unclear, it appears that the applicant deleted 'global' from the claims because the examiner cited a portion of the reference that said 'global.'").

D.      **The IMS-1000 Infringes Claims 3 and 4**

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

1 ▮
2 ▮
3 ▮
4 ▮
5 ▮
6 ▮

7  Doremi's argument is founded on the faulty contention that the terms
8 "frame" and "image" are coextensive. As previously explained, however, this
9 simply is not the case. (*See, e.g.*, '072 Patent, 2:52-54, 3:44-46; *see also* Dkt. 57-
10 12 at 6.)

11  First, Doremi's argument that claims 3 and 4 would be superfluous if an
12 image were different from a frame disregards the plain language of those claims,
13 which requires specific portions of the images (upper and lower, and left and right,
14 respectively) to be the image areas. *See* '072 Patent, 8:57-62. Doremi's claim
15 vitiation argument also fails for this same reason.

16  Moreover, to the extent that Doremi contends that Civolution's doctrine of
17 equivalents argument would vitiate the requirement to divide an image into precise
18 halves, the doctrine of equivalents still applies to claims with a specific numeric
19 value — here, a half. *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616
20 F.3d 1283, 1291-92 (Fed. Cir. 2010). ▮
21 ▮
22 ▮

23  Finally, Doremi again mischaracterizes Dr. Moulin's testimony, ▮
24 ▮ (Opp. at 11.)
25 However, Dr. Moulin's testimony related to an allegedly non-infringing alternative
26 whereby Doremi would embed **two** watermark samples in a given frame. (Ex. D
27 (Reply Moulin Report), ¶¶ 31-32; Rodriguez Report, ¶¶ 113-115.) ▮
28 ▮.

### E. Indirect Infringement

First, Doremi does not dispute in its Opposition that it has committed acts of direct infringement pursuant to 35 U.S.C. § 271, and therefore summary judgment of infringement is proper on that basis alone. Further, Doremi does not raise a genuine dispute on the issue of indirect infringement. (Opp. at 15-16.)

Doremi's intent to induce infringement by its customers is clear. Doremi had knowledge of the '072 patent (which Doremi does not dispute), which covers a method of embedding a watermark in a cinema movie (*see* '072 Patent), and directs its customers to use the IMS-1000 to perform the watermarking function to do exactly that. (*See* 4/20/2015 Molano Decl. Exs. CC, DD at 28, 255, and 259-260, HH at 26:1-7; 29:9-30:1; 30:22-24.)

Doremi plays loose with the facts when arguing that ▬▬▬▬▬ indicates the existence of a substantial non-infringing use. (Opp. at 16.) Most importantly, Doremi ignores that the context of the paragraph of Dr. Choo's declaration to which Doremi cites has nothing at all to do with an actual use of the product without watermarking functionality. (*See* Choo Decl., ¶ 31.) Further, the alleged substantial non-infringing uses Doremi advances[3] are nothing more than additional features of the product that may be complementary to, but not substantial alternative uses to, the video watermarking functionality, as all of the features are for the same stated purpose of the IMS-1000 device: "manag[ing] and deliver[ing] digital cinema experiences." (4/20/2015 Molano Decl. Ex. CC.)

## III. ARGUMENT - VALIDITY

### A. Anticipation/Obviousness

Doremi selects snippets of references, taken out of context, to characterize

---

[3] Doremi improperly relies on the unsworn report (not declaration) of its own expert, Dr. Rodriguez, which is not competent evidence and therefore should not be considered in support of Doremi's Opposition. *See Ridgel v. United States*, No. SACV 12-0071 JGB (MLGx), 2013 WL 2237884 (C.D. Cal. May 21, 2013) ("Courts in the Ninth Circuit 'have routinely held that unsworn expert reports are inadmissible.'")

those references as relating to temporal watermarking, when they are not. (Opp. at 17-19.) Doremi's cited passage from Rhoads is directed to embedding a different identification code number on each separate frame, not a single watermark embedded temporally into a sequence of images. (*See* Rhoads at 24:14-25.) The same is true of Doremi's cited passage from Yoshiura, which is directed to spatial, not temporal, embedding. (*See* Yoshiura; *see also* 3/12/15 Moulin Decl., ¶ 132.) Likewise, the Busch reference is directed to a method that operates in a transformed spatial domain, not temporal. (*See* Busch; *see also* 3/12/15 Moulin Decl., ¶149.) Moreover, Doremi's cited passage from the Wolfgang reference is, on its fact, directed to "an extension to IA-DCT" (not temporal) and Wolfgang specifically states that "temporal masking for the encoding of video sequences, remains an open research problem." (*See* Wolfgang at DOREMI000456-57; *see also* 3/12/15 Moulin Decl., ¶ 166.) The passage Doremi cites from Swanson also relates to embedding a different watermark in each frame, not temporal watermarking. (*See* Swanson at DOREMI000116.) The other primary reference cited by Doremi, Echizen, also focuses on spatial encoding techniques, not temporal. (*See* Echizen; *see also* 3/12/15 Moulin Decl., ¶ 207.) The portion of Echizen cited by Doremi (Opp. at 19) suggests nothing more than embedding a complete watermark in each frame. (*See* Echizen at DOREMI000041; *see also* 3/12/15 Moulin Decl., ¶219-220.)

Similarly, Doremi attempts to manufacture a dispute as to obviousness. (Doremi Op. at 20-22.) Doremi's opening argument makes evident the weakness of its position: Doremi argues, without any support, that there is a factual dispute because "a motion picture is nothing more than a series of still images." The testimony of Dr. Moulin that Doremi cites means nothing more than that a POSITA wishing to obtain a "complete picture" of watermarking may look at still image watermarking. Nothing Doremi cites demonstrates that a POSITA would actually combine teachings related to still images with those related to temporal

watermarking. Equally, the vague passages of the references Doremi cites do not disclose how a POSITA would combine still image watermarking technology with temporal watermarking. (*See* Opp. at 21.) Finally, the generic purpose of robustness in watermarking does not provide a reason to combine references directed to the very different watermarking technologies. (*See* Opp. at 21-22.)

### B.   Enablement

Doremi continues to confuse the requirement of enablement with something, at best, more akin to best mode (which is not a basis for invalidity – 35 U.S.C. § 282(b)(3)). This disjointed position demonstrates that Doremi cannot overcome the high hurdle of showing lack of enablement by clear and convincing evidence. At bottom, Doremi offers no evidence that a POSITA would not know how to divide to the full scope of the claims. Doremi does not contend that the act of division – whatever the image or proportions – is a difficult one for a POSITA, such that it could not be done without undue experimentation. Instead, Doremi essentially argues that a POSITA would not know how to divide the image in a way that works best for robustness, but this ignores the plain language of the claim, which only requires "dividing an image of the sequence of images into at least a first and second image area."

Doremi argues that there is inconsistency between desiring large image areas generally equal in size, and having images that "can be very small." (Opp. at 23.) However, that argument ignores that the appeal of having large, roughly equal image areas relates only to the issue of robustness, not to the requirements of the claims. Likewise, the "testing" and "extensive experimentation" Doremi refers to on page 24 of its Opposition (beyond being supported only by conclusory opinions, if anything at all) rely on the improper importation of a robustness requirement into this limitation of the claims, and therefore are irrelevant. In any event, a POSITA would understand how to best divide in order to be the most robust, with only minimal experimentation. (*See* Dkt. 70).

Dated: May 4, 2015

Respectfully submitted,

MAYER BROWN LLP

/s/ *Michael A. Molano*
Michael A. Molano

*Attorneys for Plaintiff Civolution B.V.*